IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| GIOVANNI URIBE GONZALEZ,<br><br>          Plaintiff-Petitioner,<br><br>vs.<br><br>MATT MCCLEARY, Muscatine County Jail Administrator; SAMUEL OLSON, Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, U.S. Immigration and Customs Enforcement; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement; SIRCE E. OWEN, Acting Director of the Executive Office for Immigration Review ("EOIR"); KRISTI NOEM, Secretary of the U.S. Department of Homeland Security ("DHS"); PAMELA BONDI, Attorney General of the United States; DONALD J. TRUMP, President of the United States, in their official capacities,<br><br>          Defendants-Respondents. | Case No. 3:25-cv-00137-SHL-WPK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS** |

## I.     INTRODUCTION.

Federal officials have initiated removal proceedings against Petitioner Giovanni Uribe Gonzalez, who was born in Mexico but was brought to the United States as a one-year-old by his mother more than twenty years ago. Pending completion of the removal proceedings, Petitioner has been detained without a bond hearing. He argues that this violates his statutory and due process rights and thus asks for a preliminary injunction either (a) requiring federal officials to give him a bond hearing within seven days, or (b) ordering him released outright. (ECF 1.)

For reasons set forth below, the Court concludes that Petitioner is entitled to a bond hearing. The Court will not, however, order him released outright, as it is for an Immigration Judge to decide the issue of release or detention in the first instance. The Court therefore GRANTS IN PART and DENIES IN PART his Petition for Writ of Habeas Corpus.

## II.   FINDINGS OF FACT.

The material facts are not in dispute. Petitioner was born in Mexico and brought to the United States by his mother more than twenty years ago, when he was one year old. (ECF 1, ¶ 1.) He has lived in Iowa for most of his life, graduating from Iowa schools. (Id.) He was eligible and applied for legal status under the Deferred Action for Childhood Arrivals ("DACA") program, but the program has been frozen. (Id.; ECF 1-5.) He therefore does not have legal status in the United States. (ECF 1, ¶ 1.) In early November 2025, Petitioner was arrested in Chickasaw County, Iowa, for operating while under the influence. (Id., ¶ 2.) After being released from state custody, he was taken into the custody of U.S. Immigration and Customs Enforcement ("ICE") pursuant to a detainer. (Id., ¶ 2; ECF 1-2.) Federal officials have now commenced removal proceedings against him. (ECF 1-4.) The Notice to Appear issued to Petitioner in connection with his removal proceedings alleges that he is "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Id., p. 4.) It also alleges that he "entered the United States at or near an unknown location, at an unknown time." (Id., p. 1.) Petitioner is in custody at the Muscatine County Jail. (ECF 1-9, p. 3.)

Petitioner asked an Immigration Judge to release him pending completion of his removal proceedings. (ECF 1-11.) In an Order dated December 3, 2025, the Immigration Judge concluded that it lacked jurisdiction over Petitioner's request. (Id., p. 1.) The Immigration Judge further concluded that Petitioner was not entitled to relief pursuant to a nationwide class action in the Central District of California because, according to the Immigration Judge, the District Judge in the Central District of California had not issued a class-wide declaratory judgment. (Id.)

## III.   LEGAL STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The right of habeas corpus "extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

**IV.    LEGAL ANALYSIS.**

   *A. The Court Has Jurisdiction to Review Petitioner's Claims.*

The Federal Defendants[1] argue, as a threshold matter, that the Court lacks jurisdiction under 8 U.S.C. §§ 1252(g) and (b)(9) to review Petitioner's claims. Section 1252(g) states, subject to certain exceptions, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." This jurisdiction-stripping provision applies "notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision." *Id.* Similarly, § 1252(b)(9) states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

The Federal Defendants argue that sections 1252(g) and (b)(9) preclude this Court from weighing in on active deportation cases, even for the limited purpose of evaluating whether respondents in those proceedings are entitled to bond hearings and other forms of due process.

   Federal officials have raised this argument in recent months in cases similar to this one. The argument has been repeatedly rejected. *See, e.g.*, *Hasan v. Crawford*, --- F. Supp. 3d ----, 2025 WL 2682255, at *3–4 (E.D. Va. Sept. 19, 2025); *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–47 (D. Minn. 2025); *Aditya W.H.*, 782 F. Supp. 3d at 703–06. This Court itself has rejected it several times. *See Barrajas v. Noem*, No. 4:25-cv-00322-SHL-HCA, 2025 WL 2717650, at *2–3 (S.D. Iowa Sept. 23, 2025); *Helbrum v. Williams Olson*, 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *2–3 (S.D. Iowa Sept. 30, 2025); *Enriquez Reyes v. Noem*, No. 3:25-cv-00114, ECF No. 14 (S.D. Iowa Nov. 3, 2025). The Court stands by its prior analysis, which revolves around two things.

---

[1] The "Federal Defendants" consist of every Defendant except Muscatine County Jail Administrator Matt McCleary.

First, the United States Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(g) narrowly to cover only the three "discrete acts" of commencing proceedings, adjudicating cases, and executing removal orders. *See Maldonado*, 795 F. Supp. 3d at 1144–45 (discussing *Jennings v. Rodriguez*, 583 U.S. 281 (2018) and *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)). A request for a bond hearing is not one of those three acts, but rather is "independent of, and collateral to, the removal process." *Hasan*, 2025 WL 2682255, at *4 (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)).

Second, and similarly, the Supreme Court has squarely held that § 1252(b)(9) does not deprive federal courts of jurisdiction over cases challenging whether or when bond hearings are required in removal proceedings. *See Jennings*, 583 U.S. at 292–95; *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding that § 1252(b)(9) did not prohibit judicial review of claims against federal officials for detaining aliens without bond). Holding otherwise would run the risk of "mak[ing] claims of prolonged detention [in removal proceedings] effectively unreviewable." *Jennings*, 583 U.S. at 293.

To the extent the Federal Defendants are arguing that jurisdiction does not exist because Petitioner failed to exhaust administrative remedies, the Court rejects the argument. Absent a writ of habeas corpus, Petitioner's only avenue of appeal would be to the BIA, which recently held that aliens like Petitioner who are in removal proceedings are subject to mandatory detention under § 1225 irrespective of the proper interpretation of § 1226(c)(1)(E)(ii). *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 229 (BIA 2025). An appeal therefore would have no chance of changing Petitioner's release status, but rather would simply delay resolution of his habeas petition. Exhaustion is not required in these circumstances. *See Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 778–79 (E.D. Mich. 2025) (declining to require exhaustion in similar circumstances).

For these reasons, the Court has jurisdiction over Petitioner's claims.

B.  *Petitioner Is Entitled to Habeas Relief.*

On the merits, the crucial question is whether Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225. Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons

4

or significant public benefit.'" *Jennings*, 583 U.S. at 287–88 (quoting 8 U.S.C. § 1182). The Federal Defendants argue that Petitioner is an "applicant for admission" under § 1225 and therefore is not entitled to an immigration bond hearing. (ECF 7, p. 1.) Petitioner, by contrast, argues that he is entitled to a bond hearing pursuant to 8 U.S.C. § 1226, which addresses the arrest, detention, and release of "an alien" in connection with removal proceedings. (ECF 1, ¶ 4.)

The threshold problem with the Federal Defendants' position is that it treats every person who enters the country without legal status as an "applicant for admission." *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4–5; *Hasan*, 2025 WL 2682255, at *5–9; *Romero v. Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 2025 WL 2682255, at *8. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.*; 8 U.S.C. § 1226(a). It is especially difficult to square the Federal Defendants' interpretation of § 1225(b)(2)(A) with Congress's recent decision to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See Barrajas*, 2025 WL 2717650, at *4; *Romero*, 795 F. Supp. 3d at 286–87. Under the Federal Defendants' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless because the persons subject to mandatory detention under the Laken Riley Act would have been subject to mandatory detention even without the Act simply by virtue of having entered the country without lawful authority. This is not how statutes are to be interpreted. "One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 2025 WL 2682255, at *8 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The strength of Petitioner's position on this issue is illustrated by the fact that most district courts have rejected the Government's position. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4–5; *Hasan*, 2025 WL 2682255, at *5–9; *Maldonado*, 795 F. Supp. 3d at 1150–53; *Romero*, 795 F. Supp. 3d at 281–88. At most, the Government cites two cases that have come out differently. *See Vargas Lopez v. Trump*, --- F. Supp. 3d ----, 2025 WL 2780351, at *7–10 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, --- F. Supp. 3d ----, 2025 WL 2730228, at *4–5 (S.D. Cal. Sept. 24, 2025). The weight of authority, however, remains strongly on Petitioner's side.

*See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings."). This Court will continue to follow the weight of authority and therefore concludes that Petitioner's case is governed by § 1226(a), not § 1225. Meaning: Petitioner is entitled to a bond hearing.

Petitioner asks the Court, in the alternative, to go a step further and order him immediately released. This form of relief would, however, create tension with § 1226(e), which states: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Congress clearly intended to allow the Executive Branch to make discretionary decisions without judicial oversight.

Granted, the Supreme Court has held that § 1226(e) "contains no explicit provision barring habeas review," nor does it bar federal courts from considering constitutional challenges to the Attorney General's interpretation of his or her authority. *Demore*, 538 U.S. at 517 (holding that federal courts have jurisdiction to review a constitutional challenge to § 1226(c)). This is why the Court has authority to order federal officials to hold a bond hearing when, as here, governing law so requires. The Court also may have the authority to get involved if an error of constitutional dimension occurs in the context of that bond hearing. The Court will not, however, assume the role of "Immigration Judge" in the first instance by deciding bond or detention. Instead, the Court will award relief in the form of requiring a bond hearing in the Immigration Court.

*C. The Status of the Class Action in the Central District of California Is Immaterial.*

One issue remains. Although Petitioner does not mention it, there is a putative class action in the Central District of California that might affect him. In *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), the court granted partial summary judgment in favor of four plaintiffs who sought declaratory relief establishing that the United States was required to provide individualized bond hearings in removal proceedings. A few days later, *Bautista* certified a class of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time of the Department of Homeland Security makes an

initial custody determination." *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). The Federal Defendants preemptively argue that *Bautista* provides no protection for Petitioner because the Central District of California lacked jurisdiction to issue nationwide relief. *See Lopez v. Lyons*, --- F. Supp. 3d ----, 2025 WL 3683918, at *1 (N.D. Tex. Dec. 19, 2025).

The Federal Defendants have raised legitimate questions about *Bautista*'s validity insofar as it purports to impose injunctive relief on behalf of a nationwide class. *See id.* at *6–14. These questions are, however, immaterial here. If *Bautista* properly ordered nationwide relief on a class-wide basis, Petitioner is entitled to an individualized bond hearing by virtue of being part of the class. Conversely, if *Bautista* improperly granted such relief, Petitioner is entitled to an individualized bond hearing by virtue this Court's independent analysis of the merits of his habeas corpus petition. Either way, the outcome is the same: Petitioner is entitled to habeas corpus relief in the form of an individualized bond hearing in the Immigration Court.

## V.   CONCLUSION.

The Court GRANTS IN PART and DENIES IN PART Petitioner's Petition for Writ of Habeas Corpus. (ECF 1.) The Federal Defendants shall provide Petitioner with a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven calendar days of this Order. Because the Court is not ordering Petitioner released, Defendant Matt McCleary is not obligated to take any action beyond whatever he ordinarily would do to cooperate with federal officials to ensure Petitioner's appearance at the bond hearing and comply with the outcome of that hearing.

**IT IS SO ORDERED.**

Dated: December 23, 2025

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE